**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**EDWARD RUNNELS**                                                              **PLAINTIFF**

**v.**                                                  **CIVIL ACTION NO. 3:11-CV-106-CWR-LRA**

**TAHSIN INDUSTRIAL CORPORATION,**                                    **DEFENDANT**
**USA**

<u>**ORDER**</u>

Before the Court are Tahsin Industrial Corporation, USA's motions to exclude the

testimony of Edward Runnels' expert witnesses, Shambani Watts, Robert Carbonara, and

Salvatore Malguarnera, Docket Nos. 242-47, and Tahsin's motion for summary judgment,

Docket Nos. 248-49.  Runnels opposes the motions, Docket Nos. 282-89, and Tahsin has replied,

Docket Nos. 294, 296-98.

## I.  BACKGROUND

This is a products liability action in which the Plaintiff, Edward Runnels, alleges that on

October 13, 2010, a 2007 Model ASLS-505 ladderstand manufactured by Tahsin Industrial

Corporation, USA ("Tahsin") caused him to fall and suffer serious spinal injuries when it

suddenly buckled as he attempted to erect it along with a 2007 Model ASLX-four-foot ladder

extension purchased with the ladderstand.  The ASLS-505 is a 12-foot two-person ladderstand

used to hunt game from an elevated position.  A ladderstand is comprised of a ladder section that

is connected to a tree, along with a foot platform and seat portion that sit on top of the ladder

section.  A ladderstand is one of several different types of treestands; other types of treestands

include hang-on and climber treestands.  *See* Docket No. 273-5, at 44.

Runnels claims that his accident was the result of several defects of the subject

ladderstand, including manufacturing defects, design defects, and inadequate warnings and

instructions.  Docket No. 42 (Amended Complaint).  Specifically Runnels alleges that the ladderstand was manufactured with substandard material and was prone to buckling at the joints, and that the ladderstand should have included ladder sleeves to reinforce the ladderstand's joints. Runnels also alleges, *inter alia*, that Tahsin breached express and implied warranties.  *Id.* at 5-7.

To support his claims against Tahsin, Runnels has designated Shambani Watts, Robert Carbonara, and Salvatore Malguarnera as expert witnesses.  Tahsin has filed motions *in limine* to exclude the testimony of Runnels' experts, as well as a motion for summary judgment.

## II.  DISCUSSION

Runnels' claims against Tahsin arise under the Mississippi Products Liability Act ("MPLA"), Mississippi Code Annotated § 11-1-63.  According to Mississippi law, "claims of a manufacturing or design defect must be supported by expert testimony."  *Wallace v. Ford Motor Co.*, No. 3:11-CV-567-CWR-FKB, 2013 WL 3288435, at *2 (S.D. Miss. June 28, 2013) (citation omitted).  Furthermore, expert testimony may be needed when analysis of a warning's adequacy "requires scientific, technical or other specialized knowledge."  *Wyeth Labs., Inc. v. Fortenberry*, 530 So. 2d 688, 692 (Miss. 1988).  Where, as in this case, "the adequacy of the warning is not obvious to the ordinary layperson it is necessary to have expert testimony as to this issue."  *Id.* Thus, "a plaintiff's failure to provide expert testimony in a MPLA case is cause for dismissal." *Wallace*, 2013 WL 3288435, at *2 (citation omitted).  The Court will, therefore, first consider Tahsin's motions to exclude Runnels' expert testimony before evaluating whether Runnels has sufficient evidence to survive summary judgment.

**A. Motions to Exclude**

The admissibility of expert testimony is governed by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and the post-*Daubert* amendments to Federal Rule of Evidence 702.  *See Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).  That Rule now states the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (b) the testimony is based on sufficient facts or data;
> > (c) the testimony is the product of reliable principles and methods; and
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The purpose of Rule 702 is to guide the district court's gatekeeping function.  *See Guy*, 394 F.3d at 325.  Before allowing a witness to testify as an expert, a court "must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'"  *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (quoting Fed. R. Evid. 702).  The fact that a proposed witness is an expert in one area does not qualify him to testify as an expert in all related areas.  *See id.* at 938.  Therefore, "[a] district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject."  *Id.* at 937 (citation omitted).

A court's gatekeeping function also involves ensuring that "the expert uses reliable methods to reach his opinions," and that those opinions are "relevant to the facts of the case."  *Guy*, 394 F.3d at 325.  "Reliability is determined by assessing whether the reasoning or

methodology underlying the testimony is scientifically valid.  Relevance depends upon whether that reasoning or methodology properly can be applied to the facts in issue." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quotation marks, citations, and brackets omitted); *see United States v. Fields*, 483 F.3d 313, 342 (5th Cir. 2007).  The party offering the expert bears the burden of establishing reliability by a preponderance of the evidence.  *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

In *Daubert*, the Supreme Court described several non-exclusive factors that trial judges should consider in gauging reliability, including whether the proposed technique or theory can be or has been tested, whether it has been subjected to peer review and publication, whether its error rate is acceptable, whether the theory is generally accepted in the scientific community, and whether there are standards controlling the technique.  *See Guy*, 394 F.3d at 325; *Knight*, 482 F.3d at 351.  It later instructed that "the reliability analysis must remain flexible: not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant."  *Guy*, 394 F.3d at 325 (citation omitted); *see Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007).

The *Daubert* analysis applies to the process of the expert's conclusions, not the merits of the conclusions themselves.  *Guy*, 394 F.3d at 325.  The merits remain subject to attack at trial under traditional principles of "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof."  *Daubert*, 509 U.S. at 596.  "[I]n determining the admissibility of expert testimony, the district court should approach its task with proper deference to the jury's role as the arbiter of disputes between conflicting opinions."  *United*

*States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., State of Miss.*, 80 F.3d

1074, 1077 (5th Cir. 1996) (quotation marks and citation omitted).

The Fifth Circuit has quoted with approval the Seventh Circuit's observation that

"[u]nder the regime of *Daubert* a district judge asked to admit scientific evidence must determine

whether the evidence is genuinely scientific, as distinct from being unscientific speculation

offered by a genuine scientist." *Moore*, 151 F.3d at 278 (quotation marks and citation omitted).

The extrapolation or "leap[] from an accepted scientific premise to an unsupported one . . . must

be reasonable and scientifically valid." *Id.* at 279 (citations omitted).

As explained below, under the requirements of Rule 702 and the *Daubert* standards, the

testimony of Shambani Watts shall be excluded in its entirety, and the testimony of Robert

Carbonara and Salvatore Malguarnera shall be limited to their areas of expertise.

       1.      Shambani Watts

Watts earned a bachelor of science degree in industrial technology in 1992.  Docket No.

243-3, at 1.  After completing college, he worked for about two years in manufacturing at

General Motors and Milwaukee Electric Tools.  Docket No. 243-2, at 50.  Since that time, Watts

became a certified law enforcement officer and has worked in several capacities, including

instructing Corps of Engineers employees on the proper use of marine safety equipment as an

outdoor safety instructor at Jackson State University; hosting an online television show that

focuses on hunting, fishing, and other outdoor activities; providing professionally guided hunting

and fishing excursions; and serving as a licensed insurance marine field adjuster.  Docket No.

243-3, at 1-2.

Watts is presently the owner and operator of Watts Marine, a company that sells and

services boats, outdoor equipment, and recreational equipment.  Docket No. 243-2, at 34-35.
According to Watts, about 80% of Watts Marine's business involves boats, and about 10% of the
business involves fishing.  *Id.* at 34-35.  Watts estimates that about three to five percent of his
business involves selling treestands, but he acknowledges that he sells hang-on and climber
treestands rather than ladderstands.  *Id.* at 36-39.

Although Watts has never qualified as an expert in a federal court, Watts was certified as
an expert in a case in the Circuit Court of Bolivar County, Mississippi, for the purpose of
providing testimony regarding a fall restraint device.  *Id.* at 21-22.  That case did not involve the
use of a fall restraint device with a ladderstand.  *Id.*

In the present case, Runnels retained Watts as "an expert in the field of hunting safety
and outdoor recreation."  Docket No. 288-2, at 1.  In his March 13, 2012, preliminary opinions,
Watts opined that the ladderstand "failed because it did not have ladder sleeves to support the
joint areas," and that buckling would not have occurred if the ladder sleeves had been used.  *Id.*
He also concluded that the ladderstand's failure "was related to the buckling of the metal and not
anything [Runnels] was doing."  *Id.* at 2.  Furthermore, Watts concluded that Runnels' failure to
use a safety harness was irrelevant to this case because Runnels "would not be required to have a
safety harness on him at the time of assembly or erection."  *Id.*

Tahsin argues that Watts is not qualified to provide expert opinions on the issues
presented in this case.  Watts is not an engineer, accident reconstructionist, design engineer,
metallurgist, or materials expert, and he has no experience relating to the design or manufacture
of ladderstands.  Docket No. 243-2, at 13-14, 25, 42-43, 60-62.  He has no formal training that
would qualify him as an expert on treestands.  Although a hunting safety course he took in 1980

6

as a junior high student may have touched on the topic of treestand safety, *id.* at 17, as an adult, Watts has not taken any courses regarding the proper assembly and use of ladderstands. *Id.* at 15-19. He has merely attended a few seminars that included discussion of treestand safety. *Id.* at 18-19. Watts admits that the basis of his knowledge on how to safely utilize treestands is his review of the manufacturer's instructions and warnings. *Id.* at 40.

In addition to lacking formal training regarding ladderstand usage and safety, Watts' experience with ladderstands is minimal. He has only installed seven or eight ladderstands during his 25 years of hunting. *Id.* at 77-83. The last time he installed a ladderstand was more than five years ago. *Id.* at 82. Additionally, although he has hunted from ladderstands in the past, he acknowledges that he generally hunts from the ground and does not currently use ladderstands. *Id.* at 85.

Nothing about Watts' knowledge, skill, experience, training, or education suggests that he is qualified to testify that the absence of ladder sleeves caused Runnels' accident, that ladder sleeves would have prevented the accident, that the buckling of the metal caused the ladderstand's failure, or that none of Runnels' actions, including his failure to use the safety harness, contributed to his accident. Thus, Watts will be precluded from testifying on those topics. *See Lee v. Nat'l R.R. Passenger Corp. (Amtrak)*, No. 3:10-CV-392-CWR-LRA, 2012 WL 92363, at *2-3 (S.D. Miss. Jan. 11, 2012) (noting that proposed expert must have *particular* expertise, not *potential* expertise).

Regarding Watts' opinions on the inadequacy of the ladderstand's and extension's warnings and instructions, Watts admits that he has never been involved in the process in which instructions or warnings for ladderstands or any hunting products were drafted. Docket No. 243-

7

2, at 42-44.  Further, he has not identified any training or experience that would qualify him as a human factors expert.  These circumstances, along with Watts' lack of sufficient practical experience and knowledge of ladderstand use, preclude him from providing expert opinions about warnings and instructions in this case.

In addition to Watts' lack of qualifications to testify as an expert on any of the topics relevant in this case, Runnels has failed to show that Watts' proposed testimony is based on sufficient facts or data, or that the testimony is the product of reliable principles and methods as required by Rule 702 of the Federal Rules of Evidence.  Watts has not performed any calculations, tests, meaningful research, or accident reconstruction to reach his conclusions.  *Id.* at 26, 28, 127, 136.  Consequently, he will not be permitted to testify as an expert at trial.

2.      Robert Carbonara

Robert Carbonara graduated with a bachelor of science in physics in 1959 and a doctor of philosophy in materials science in 1970.  Docket No. 282-4, at 1.  He also engaged in graduate studies in metallurgy from 1960 to 1963.  He has more than 50 years of experience in materials science and at least 20 years of experience in failure analysis.  *Id.* at 1-2.  He has provided expert testimony in several state and federal courts within the last seven years.  Docket No. 282-2.

Runnels has designated Carbonara as an expert in physics, materials science, failure analysis, equipment design and manufacturing, and metallurgy.  Docket No. 283, at 2.  Carbonara opines that the ladderstand failed because it is made of substandard metal and that the ladderstand's warnings and instructions are deficient.  Tahsin argues that Carbonara lacks the background, experience, and training to render any opinions concerning the ladderstand because he is not an engineer; he has no previous training, background, or expertise with ladderstands; he

8

has never assembled, installed, or used a ladderstand; and he had never seen a ladderstand assembled and installed until the night before his deposition when he watched the safety video for the ladderstand.  Docket No. 245, at 2.  However, Carbonara need not be an expert on ladderstands specifically to be qualified to offer expert opinions relevant to this case, as long as his conclusions have a logical connection to his areas of expertise.  *See Gibson v. Invacare Corp.*, No. 4:09-CV-00182-CWR-LRA, 2011 WL 2262933, at *2-3 (S.D. Miss. June 7, 2011) (discussing *McSwain v. Sunrise Med., Inc.*, No. 2:08cv136KS-MTP, 2010 WL 200004 (S.D. Miss. Jan. 14, 2010)).

Given Carbonara's background in materials science and metallurgy, he is qualified to testify regarding the quality and strength of the metal used to make the ladderstand, including his conclusion that the metal was inappropriate for use on the ladderstand because it was below standard.  Although Tahsin argues that Carbonara's opinions are based solely on visual examination of the ladderstand and thus do not satisfy *Daubert*'s requirements, Docket No. 245, at 15, Carbonara has testified that his opinions are based on metallography, tensile testing, and chemistry tests of samples of material cut from the subject ladderstand.  Docket No. 161-2, at 16-17.  The Court finds that Carbonara's testimony regarding the attributes of the ladderstand's metal is sufficiently reliable to present to a jury.  Tahsin may, of course, attack the validity of Carbonara's tests and conclusions during cross-examination.

While Carbonara may testify about the strength of the materials that comprise the ladderstand, Carbonara admits that he does not hold himself out as a human factors expert, *id.* at 20, and that he has never been qualified as a warnings or human factors expert in federal court.  *Id.* at 41.  Additionally, his experience with ladderstands is minimal.  Therefore, his opinions

regarding the warnings and instructions are not logically connected to his areas of expertise. Furthermore, Runnels has not established that the methods and reasoning behind Carbonara's opinions on warnings and instructions meet the *Daubert* standards for reliability.  Consequently, Carbonara cannot offer opinions on warnings and instructions.

Carbonara's lack of knowledge, experience, or training regarding ladderstand assembly, installation, and usage also makes him unqualified to testify about whether Runnels' conduct leading up to his accident caused or contributed to the accident, or what process of assembly and installation of the ladderstand and extension should have been used.  In fact, during his deposition, Carbonara acknowledged that he would not offer an opinion regarding whether factors such as the placement of the installation ropes caused or contributed to the accident, or whether Runnels properly assembled and installed the ladderstand.  *Id.* at 36-37.

The parties dispute whether Carbonara may offer testimony on accident reconstruction. Runnels asserts that Carbonara will be testifying as an accident reconstructionist.  Docket No. 283, at 7.  During his deposition, Carbonara stated he would offer an opinion regarding the manner in which the ladderstand collapsed.  Docket No. 161-2, at 27.  Tahsin argues that Carbonara is not qualified to testify regarding accident reconstruction in this case because he has never reconstructed a treestand accident or even assembled, installed, or used a ladderstand. Docket No. 297, at 4.  Further, Tahsin argues that Carbonara "has no factual basis to offer [accident reconstruction] opinions."  *Id.*; *see* Docket No. 245, at 12.  Indeed, Runnels has not met his burden to show the connection between Carbonara's areas of expertise and his proposed accident reconstruction testimony in this case.  Nor has Runnels provided the reasoning or methodology underlying any such testimony that would establish the testimony's reliability.  As

10

such, and being guided by *Wilson v. Woods* and its progeny, Carbonara will not be permitted to offer accident reconstruction opinions.  *See* 163 F.3d at 937-38.

Tahsin also argues that Carbonara should be prohibited from testifying that utilization of ladder sleeves would have prevented Runnels' accident.  The Court finds no need to determine whether Carbonara is qualified to serve as an expert on the ladderstand's design because Carbonara has admitted that he did not know the forces that were placed on the ladderstand's joints at the time of Runnels' fall, and that he did not conduct any tests on the ladderstand or perform any calculations to support his opinion that the accident would not have occurred if the ladder sleeves had been used.  Docket No. 161-2, at 95-97, 101.  Therefore, as Tahsin has argued, Carbonara's testimony regarding the ladder sleeves is not based on sufficient facts or data, and is not the product of reliable principles and methods.  *See* Fed. R. Evid. 702(b), (c).  He is not permitted to testify regarding the use of a ladder sleeve as an alternative product design.

### 3.    Salvatore Malguarnera

Malguarnera graduated with a doctorate of philosophy in mechanical engineering in 1978.  Docket No. 284-6, at 1.  He is a licensed professional engineer in 29 states, including Mississippi.  *Id.* at 2.  According to his curriculum vitae, Malguarnera has worked as a technical consultant at SEA, Ltd. since 1987, where he "[i]nvestigates, analyzes, and reconstructs accidents involving machines, mechanical products, motor vehicles, and industrial equipment" and "[c]onducts design and failure analysis of mechanical devices and products."  *Id.* at 1.  Runnels has designated Malguarnera as an expert in mechanical engineering.  Docket No. 285, at 2.  Malguarnera opines that the ladderstand was made in such a way that it was prone to buckling.

11

Tahsin argues that Malguarnera is not qualified to provide opinions in this case because "he has absolutely no previous training, background, or expertise with ladderstands."  Docket No. 247, at 2.  Runnels disagrees, asserting that Malguarnera's engineering background qualifies him to testify regarding the ladderstand, and noting that Malguarnera has investigated several treestand cases.  Docket No. 285, at 2; *see* Docket No. 247-2, at 20 (Malguarnera testifying that he has investigated about a half-dozen treestand cases, but none involving ladderstands).  As explained above with regard to Carbonara, Malguarnera may testify on issues pertaining to the ladderstand that are logically connected to his expertise, even if he does not have extensive experience working with ladderstands specifically.  For example, Malguarnera is qualified to testify regarding the ladderstand's failure mode and his calculations of the critical buckling load of the ladderstand.  However, because he is not an expert on ladderstand usage and installation, he is not qualified to testify regarding whether Runnels misused the ladderstand during his attempt to install it.

With regards to warnings and instructions, during Malguarnera's deposition on June 14, 2012, he opined that the warnings were inadequate because they lacked warnings that the ladderstand was prone to buckling and that the crimped area of the ladderstand joint was weaker than the noncrimped area.  Docket No. 247-2, at 48.  He also stated that the instructions should have included directions about how a user can wear a safety harness when climbing a ladderstand during the installation process if the harness was intended to be used during installation.  *Id.* at 48-49.  Tahsin argues that Malguarnera lacks qualifications to be a warnings expert because he does not hold himself out as a human factors expert, *id.* at 27; he has no experience assembling, installing, or using a ladderstand, *id.* at 18-19, 32; he has never designed

or manufactured any type of hunting product, including a ladderstand, *id.* at 19-20; and he has never drafted instructions or warnings for ladderstands or provided input on ladderstand instructions or warnings, *id.* at 27-28.

Runnels points to Malguarnera's deposition testimony to argue that Malguarnera is qualified to testify on warnings. Malguarnera testified that he has previously provided expert opinion on matters involving warnings and instructions, and that while employed in the 1980s at N.L. Industries, a designer, manufacturer, and supplier of oilfield equipment and services, he provided input on instructions and warnings for equipment that he helped to design and manufacture. *Id.* at 27-29. Malguarnera's testimony does not establish that his engineering expertise is logically connected to his opinion that the warnings and instructions of ladderstands and ladderstand extensions were inadequate, especially given Malguarnera's admission that he had no familiarity with ladderstands prior to his involvement with this case. Malguarnera is, therefore, unqualified to testify as to the adequacy of the ladderstand's warnings and instructions. In addition to Malguarnera's lack of qualification to testify regarding warnings and instructions, Runnels has not demonstrated that Malguarnera's proposed testimony on the warnings and instructions is reliable and helpful to the jury as required by *Daubert* and Rule 702.

Tahsin also argues that Malguarnera's opinion that utilization of ladder sleeves would have prevented the accident should be stricken. Docket No. 247, at 5. Tahsin points out that Malguarnera has never evaluated a ladder sleeve, and that he has not performed tests or conducted studies to substantiate his opinion. *Id.* at 5-6. Also, during his deposition, Malguarnera could not provide any opinions regarding the increased strength that the ladder sleeves would have provided the joint section so that it would not buckle. Docket No. 247-2, at

128-30.  His opinion appears to be mere speculation.  Runnels has not met his burden of proving that Malguarnera used reliable methods to conclude that ladder sleeves would have prevented Runnels' accident.  As a result, Malguarnera cannot offer that opinion.

Based on Malguarnera's deposition testimony, Tahsin also argues that Malguarnera should not be allowed to testify at trial regarding numerous topics for which, according to Tahsin, Malguarnera has stated he has no opinion.  Docket No. 247, at 4-5.  Runnels, on the other hand, states that Malguarnera "will not be testifying to opinions in other non-related fields, but will rely on these fields to explain how he reached his conclusions."  Docket No. 285, at 8-12.

As a general matter, Malguarnera's testimony, just as every other expert in this case, will be limited to the opinions provided in his expert report that satisfy *Daubert* and Rule 702 standards, and his explanations for those opinions provided during his deposition, as restricted by this Order and any future orders of the Court.  With that limitation in mind, each of the topics for which Tahsin asserts Malguarnera cannot offer testimony shall be discussed in turn.

### a.   Accident reconstruction

Malguarnera may testify that his conclusions are based, in part, on witness testimony regarding what Runnels was doing leading up to the ladderstand's collapse, but Malguarnera may not make any suggestion that he has scientifically verified the witnesses' versions of events. *See* Docket No. 247-2, at 37-40.

### b.   Plaintiff's receipt of all ladderstand and extension parts

Presumably, Tahsin objects to Malguarnera's statements that ladder sleeves were not included with Runnels' ladderstand and extension.  *See* Docket No. 284-4, at 5; Docket No. 247-

14

2, at 42-43.  As explained below, Runnels has failed to present competent evidence that a ladderstand with ladder sleeves is an alternative design that would have prevented Runnels' accident, and consequently, the design defect claim cannot survive summary judgment. Therefore, to the extent Malguarnera intends to offer testimony that Runnels' ladderstand and extension did not have ladder sleeves as support for the design defect claim, such testimony is excluded as irrelevant.

> c.   *Opinions regarding the straps or ropes on the ladderstand*

Malguarnera testified that his opinion does not rely on information regarding the straps or ropes involved in the installation process.  Docket No. 247-2, at 61-63.  Thus, contrary to Runnels' assertion that Malguarnera may testify that the damage to the straps and rope supports his opinions that "the cause of the fall was the failure of the joints due to weakness and lack of sleeves at the joints," such testimony is not permitted.  Docket No. 285, at 9.

> d.   *Opinions concerning the tree or the ground around the tree, Plaintiff's misuse of the product, whether Plaintiff's actions contributed to or caused the accident, the angle of the ladderstand, and the stabilizer bar*

Runnels asserts that to the extent Tahsin blames his accident on the way in which he attempted to install the ladderstand, including but not limited to his choice of a tree, the angle the ladderstand stood against the tree, and the use of the stabilizer bar, Malguarnera will provide an opinion that none of those factors caused the collapse of the ladderstand.  *Id.* at 9-10. Malguarnera's report includes the statement that "[t]he buckling of the side rail tubes of [the ladderstand and the attached extension] was not caused or contributed to by Mr. Runnels," Docket No. 284-4, at 7, and he reiterates that opinion during his deposition.  *See* Docket No. 247-2, at 33-34, 36, 66.  In essence, Malguarnera's opinion is that regardless of whether Runnels

correctly or incorrectly installed the ladderstand, it would have collapsed.  Docket No. 284-1, at 38.

As discussed earlier, Malguarnera is not qualified to provide an expert opinion regarding whether Runnels misused the ladderstand.  However, the question of whether Runnels' actions—proper or improper—caused or contributed to his fall from the ladderstand is a separate inquiry. Neither party has analyzed whether Malguarnera's testimony on this issue is reliable, although Tahsin has argued generally that all of Malguarnera's opinions fail the requirements of *Daubert*. The Court will explore this point with the parties and receive further argument on this issue prior to any testimony being received by the jury, and, therefore, defers ruling on this matter.

> e.    *Other competitors' conduct and product design in or about 2007 in the treestand industry*

To the extent Malguarnera's proposed testimony regarding competitors' conduct and product design is intended to support Runnels' design defect claim, such testimony is excluded as irrelevant because the design defect claim cannot survive summary judgment.

> f.    *Whether the base of the ladderstand moved at the time of the fall*

In response to a question regarding whether the base of the ladderstand moved inward, outward, or stayed in its same location during the accident, Malguarnera responded, "I can't tell you that."  Docket No. 247-2, at 85.  Therefore, if this topic arises, he may only testify that he does not know in what manner the ladderstand's base moved, and that his conclusions are not based on those facts.

> g.    *Whether the treestand "yoke" or V bracket moved*

In accordance with his deposition testimony, Malguarnera may only testify that he has no

knowledge of whether the V bracket or yoke that was connected to or touching the tree remained

in place before the ladderstand started buckling, and that he did not rely on that fact to reach his

conclusions.  *Id.* at 85.

### B.  Motion for Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  A dispute is genuine "if the evidence supporting its resolution in favor of the

party opposing summary judgment, together with any inferences in such party's favor that the

evidence allows, would be sufficient to support a verdict in favor of that party," *St. Amant v.*

*Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citation omitted), and a fact is material if it is one

that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986).

A party seeking to avoid summary judgment must identify admissible evidence in the

record that shows a factual dispute.  Fed. R. Civ. P. 56(c)(1).  When evaluating a motion for

summary judgment, a court must refrain from making credibility determinations or weighing the

evidence.  *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001).

Runnels' claims arise under the MPLA, Mississippi Code Annotated § 11-1-63, which

provides, in part, as follows:

> The manufacturer or seller of the product shall not be liable if the claimant does
> not prove by the preponderance of the evidence that at the time the product left
> the control of the manufacturer or seller:
>
>> (i) 1. The product was defective because it deviated in a material way from
>> the manufacturer's specifications or from otherwise identical units
>> manufactured to the same manufacturing specifications, or

2. The product was defective because it failed to contain adequate warnings
or instructions, or
3. The product was designed in a defective manner, or
4. The product breached an express warranty or failed to conform to other
express factual representations upon which the claimant justifiably relied in
electing to use the product; and

(ii) The defective condition rendered the product unreasonably dangerous to
the user or consumer; and

(iii) The defective and unreasonably dangerous condition of the product
proximately caused the damages for which recovery is sought.

Miss. Code Ann. § 11-1-63(a).  "Proximate cause of an injury is that cause which in natural and

continuous sequence unbroken by an efficient intervening cause produces the injury and without

which the result would not have occurred."  *Delahoussaye v. Mary Mahoney's, Inc.*, 783 So. 2d

666, 671 (Miss. 2001) (quoted in *Forbes v. Gen. Motors Corp.*, 935 So. 2d 869, 880 (Miss.

2006)).

Tahsin argues that Runnels cannot prove that a defect of the ladderstand caused his

injuries, and that consequently, summary judgment is appropriate as to each of Runnels' claims.

Docket No. 249, at 15-18.  According to Tahsin, Runnels failed to follow the instructions and

warnings for installing the ladderstand and extension, and his misuse of the products was the sole

proximate cause of the accident.  *Id.*  Runnels, however, contends that the manner in which he

installed and used the ladderstand and extension did not cause his accident, and that a genuine

dispute of material fact exists regarding each of his claims.

Each of Runnels' MPLA claims will be discussed in turn.

1.      Inadequate Warnings and Instructions

The MPLA provides as follows regarding inadequate warnings or instructions claims:

18

> (i) In any action alleging that a product is defective because it failed to contain adequate warnings or instructions pursuant to paragraph (a)(i)2 of this section, the manufacturer or seller shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller, the manufacturer or seller knew or in light of reasonably available knowledge should have known about the danger that caused the damage for which recovery is sought and that the ordinary user or consumer would not realize its dangerous condition.
>
> (ii) An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates sufficient information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to an ordinary consumer who purchases the product . . . .

Miss. Code Ann. § 11-1-63(c).  The plaintiff has the burden of proving that a warnings or instructions defect rendered a product unreasonably dangerous, and that the inadequate warnings or instructions proximately caused the injuries suffered.  *See 3M Co. v. Johnson*, 895 So. 2d 151, 166 (Miss. 2005); *Vandiver v. Ohio River Co., LLC*, 174 F. App'x. 206, 208 (5th Cir. 2006) (applying Mississippi law) (unpublished).  In other words, plaintiffs must be able to "demonstrate that some other warning would have given them additional information that they did not already know and that they would have acted upon that new information in a manner that would have avoided the injuries."  *3M Co.*, 895 So. 2d at 166.  Because Carbonara, Malguarnera, and Watts are not qualified to offer expert testimony on whether the instructions or warnings were adequate, or what warnings or instructions would have prevented Runnels' accident, Runnels has failed to present sufficient evidence to support his warnings and instructions claim.  Summary judgment will, therefore, be granted in favor of Tahsin on Runnels' inadequate warnings and instructions claim.

19

2.      Design Defect

According to the MPLA, a plaintiff cannot prevail on a design defect claim unless he

proves that a feasible design alternative would have prevented the plaintiff's injuries:

> In any action alleging that a product is defective because of its design pursuant to
> paragraph (a)(i)3 of this section, the manufacturer or product seller shall not be
> liable if the claimant does not prove by the preponderance of the evidence that at
> the time the product left the control of the manufacturer or seller:
>
>> (i) The manufacturer or seller knew, or in light of reasonably available
>> knowledge or in the exercise of reasonable care should have known, about
>> the danger that caused the damage for which recovery is sought; and
>
>> (ii) The product failed to function as expected and there existed a feasible
>> design alternative that would have to a reasonable probability prevented the
>> harm. A feasible design alternative is a design that would have to a
>> reasonable probability prevented the harm without impairing the utility,
>> usefulness, practicality or desirability of the product to users or consumers.

Miss. Code Ann. § 11-1-63(f).  To support a design defect claim, "a proposed expert must 'be

able to independently establish the technical basis for the utility and safety of the proposed

alternative designs.'"  *Elliot v. Amadas Indus., Inc.*, 796 F. Supp. 2d 796, 808 (S.D. Miss. 2011)

(quoting *Watkins v. Telsmith, Inc.,* 121 F.3d 984, 993 (5th Cir. 1997)).

Runnels alleges that the ladderstand and extension "were too weak and flimsy and subject

to folding at the crimped joints," and that such weakness caused the ladderstand to buckle or

bend at the joints where two of the parts were connected.  Docket No. 287, at 23.  Through the

testimony of Carbonara, Malguarnera, and Watts, Runnels asserts that an alternative design

consisting of thicker metal or metal sleeves would have strengthened the joints and prevented the

buckling.  *Id.* at 23-25.  However, as discussed above, Watts is unqualified to offer an opinion

regarding the alleged design defect and alternative design.  Furthermore, although Carbonara and

20

Malguarnera conclude that thicker metal and ladder sleeves would have prevented the accident, Runnels has failed to demonstrate the reliability of Carbonara's and Malguarnera's testimony on this issue as required by *Daubert* and Rule 702. "The proper methodology for proposing alternative designs includes more than just conceptualizing possibilities." *Elliot*, 796 F. Supp. 2d at 810 (quotation marks and citations omitted). Thus, summary judgment in favor of Tahsin will be granted as to Runnels' design defect claim.

### 3.   Manufacturing Defect

To prevail on a manufacturing defect theory, a plaintiff must show that a product "deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications," and that "[t]he defective condition rendered the product unreasonably dangerous to the user or consumer . . . . [and] proximately caused the damages for which recovery is sought." Miss. Code Ann. § 11-1-63(a). Runnels' manufacturing defect claim is based on expert testimony that the subject ladderstand was made of substandard material that led to the ladderstand's failure. *See* Docket No. 287, at 23; Docket No. 247-2, at 106-08. In support of its motion for summary judgment, Tahsin argues that several facts refute any argument that the ladderstand's metal was deficient, including Runnels' use of the ladderstand for several years without incident. Docket No. 294, at 5-6. A jury must resolve the genuine dispute of facts on this issue. Therefore, summary judgment is denied as to the manufacturing defect claim.

### 4.   Punitive Damages

Runnels has prayed for punitive damages in this action. The Mississippi legislature has established the following standard for a plaintiff's recovery of punitive damages:

> Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.

Miss. Code Ann. § 11-1-65(1)(a). These damages may be awarded "as punishment for the defendant's wrongdoings so that others may be deterred from similar offenses." *Gordon v. Nat'l States Ins. Co.*, 851 So. 2d 363, 366 (Miss. 2003) (citation omitted).

In considering whether punitive damages are appropriate to place before the jury, a trial court must first examine "[t]he totality of the circumstances and the aggregate conduct of the defendant." *Bradfield v. Schwartz*, 936 So. 2d 931, 937 (Miss. 2006) (quotation marks and citations omitted). The question is whether "a reasonable, hypothetical trier of fact could find either malice[,] gross neglect/reckless disregard," or fraud. *Doe ex rel. Doe v. Salvation Army*, 835 So. 2d 76, 81 (Miss. 2003) (citation omitted).

"Mississippi law does not favor punitive damages; they are considered an extraordinary remedy and are allowed with caution and within narrow limits." *Warren v. Derivaux*, 996 So. 2d 729, 738 (Miss. 2008) (quotation marks and citation omitted).

Tahsin argues that Runnels has not presented sufficient evidence to establish the elements for punitive damages because "[t]here is no evidence [that] the Defendant acted with actual malice or with a willful, wanton or reckless disregard for the safety of others." Docket No. 249, at 22. In response, Runnels does not identify any evidence that supports an award of punitive damages, but instead argues that "a punitive damages claim may not be dismissed" until after a jury has returned a verdict on compensatory damages. Docket No. 287, at 34. This Court has already rejected this exact argument because summary judgment is appropriate when, as in the

present case, the plaintiff fails to identify evidence that would entitle him to punitive damages. *See Wallace v. Ford Motor Co.*, No. 3:11-CV-567-CWR-FKB, 2013 WL 2630241, at *2-3 (S.D. Miss. June 11, 2013).  As such, Tahsin's motion for summary judgment as to punitive damages is granted.

### 5.    Runnels' Other Claims

Runnels' Amended Complaint includes a list of 31 claims against Tahsin, including a claim for violation of the MPLA and claims for negligence, strict liability, breach of contract, and breach of express and implied warranties.  In response to Tahsin's motion for summary judgment, Runnels asserts that his claims are supported by facts and evidence and that "[a]ny specific claims plead[ed] in the Complaint that have not been specifically addressed by Tahsin in its Summary Judgment should not be dismissed."  Docket No. 287, at 34-35.  Because Tahsin has not met its burden of showing that there is no genuine dispute of material fact as to each claim, the Court denies Tahsin's motion for summary judgment as to those claims not specifically addressed in Tahsin's motion.[1]

### III. CONCLUSION

For the foregoing reasons, it is hereby ordered that

(1) Defendant's Motion to Preclude Shambani Watts from Testifying at Trial, Docket No.

---

[1] In its reply brief, Tahsin includes a section captioned "Plaintiff's Warranty Claim Fails as a Matter of Law."  Docket No. 294, at 6.  However, that section relates to Plaintiff's warning claims instead of his warranty claims.  *See id.*  Thus, this Order does not dispose of Plaintiff's warranty claims.  The fact that Tahsin may not have specifically sought summary judgment as to some claims does not, however, guarantee that all claims will ultimately be considered by the jury.  *See Wallace*, 2013 WL 3288435, at *8 (noting that negligence claims were subsumed into the MPLA); *Lawson v. Honeywell Int'l, Inc.*, 75 So. 3d 1024, 1027 (Miss. 2011) ("The MPLA provides the exclusive remedy for strict-liability claims against a manufacturer or seller for damages caused by a product that has a design defect rendering it unreasonably dangerous."); *Cedatol v. Russell Brands, LLC*, No. 2:11-CV-120-KS-MTP, 2013 WL 2385189, at *3 (S.D. Miss. May 30, 2013); *Chatman v. Pfizer*, ___ F. Supp. 2d ___, No. 5:11-CV-69-DCB-JMR, 2013 WL 1305506 (S.D. Miss. Mar. 28, 2013).

242, is granted;

(2) Defendant's Motion to Exclude Robert Carbonara, Docket No. 244, is granted in part and

denied in part;

(3)  Defendant's Motion to Exclude Salvatore Malguarnera, Docket No. 246, is granted in

part, denied in part, and deferred in part;

(4) Defendant's Motion for Summary Judgment, Docket No. 248, is granted in part and

denied in part.

**SO ORDERED**, this the 23rd day of December, 2013.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE